IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| EASTPORT VENTURES, LTD.    )<br>                            )<br>       Plaintiff,          )<br>                            )<br>       v.                   )       1:06cv1177(JCC)<br>                            )<br>ALEKSANDER KARIMAN, *et. al.*,  )<br>                            )<br>       Defendants.          ) | |

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Defendants' motion to dismiss.  For the following reasons, the Court will grant Defendants' motion to dismiss Count II and III, and defer judgment on Count I until completion of discovery.

### I.  Background

This action arises from a joint venture agreement made in Kiev, Ukraine on October 18, 2001, between Sergei Victorovich Khoroshaylov ("Khoroshaylov"), a Ukrainian citizen, and Defendant Aleksander Valentinovich Kariman ("Kariman"), a Ukrainian national currently residing in the United States.  Plaintiff Eastport Ventures, Ltd. ("Eastport") is an English corporation with its principal place of business in London, England.[1] Kariman is the owner of AK Soft Resources, Inc. ("Soft, Inc."), a corporation of unknown citizenship with a principal place of

---

[1] It was pointed out at oral argument that Khoroshaylov is the sole owner of Eastport Ventures, although no documentation has been provided to the Court evidencing this assertion.

business in Fairfax, Virginia, and a principal member of Soft Resources, LLC ("Soft LLC"), a Virginia limited liability company with a principal place of business in Fairfax County, Virginia. Plaintiff is the assignee of the claims of Khoroshaylov for the October 18, 2001 Agreement.  The facts as alleged by Plaintiff are as follows:

  On October 18, 2001, Kariman and Khoroshaylov entered into a joint venture agreement ("Agreement") for the development and exploitation of certain oil and gas rights in Ukraine. Pursuant to the Agreement, Khoroshaylov was to pay a total of $1,200,000 to Kariman to invest in the joint venture, including the purchase of stock in a company known as ZAO Energy 95, or Energiya 95 ("Energiya").  From October to December 2001, Khoroshaylov paid five installments totaling $865,000 to Kariman through an account at Riggs Bank, N.A., Washington, DC in the name of Soft, Inc.  Khoroshaylov paid an additional $22,000 to Kariman in February 2002.  In or about June 2002, Khoroshaylov learned that Kariman had not performed his obligations under the Agreement and requested the return of his funds.  On June 28, 2002, Kariman allegedly admitted that he had not invested the $887,000 received in Energiya as required.  However, Khoroshaylov has been unable to obtain a refund of the money paid to Kariman.

  On February 25, 2005, Khoroshaylov assigned rights under the Agreement to Plaintiff.  On October 18, 2006, Plaintiff

filed a Complaint in the Eastern District of Virginia alleging breach of the Agreement against Kariman ("Count I"), and money had and received against Soft, Inc. ("Count II") and Soft LLC ("Count III").  In Count II, Plaintiff alleges that Soft Inc. was the original recipient of the money paid and holds that money "under circumstances that make it illegal or inequitable to retain those funds."  Compl. at ¶¶ 24-28.  In Count III, Plaintiff alleges that Soft LLC is the same company as, or successor in interest to, Soft Inc., and now holds the money.  Plaintiff seeks the amount of $887,000, along with prejudgment interest from June 1, 2002, costs and fees, and any other relief the Court may deem proper.

## II.  Standard of Review

### A)  Statute of Limitations

Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense.  *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996)(internal citations omitted) (statute of limitations defense is an affirmative defense that merits a dismissal pursuant Rule 12(b)(6)); *see also* 5B Wright & Miller, Federal Practice and Procedure § 1357 ("A complaint

showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).")

    B)   <u>Lack of Subject Matter Jurisdiction</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where subject matter jurisdiction is challenged, the factual allegations are assumed true. *See Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). If, however, "the motion challenges the actual existence of the Court's subject matter jurisdiction, . . . the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Id*. (citing *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994)). The burden of proving subject matter jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

    C)   <u>Lack of Personal Jurisdiction</u>

Federal Rule of Civil Procedure 12(b)(2) permits

dismissal of an action where the court lacks the requisite personal jurisdiction.  To establish jurisdiction over a non-resident, this Court must first consider whether jurisdiction is authorized by Virginia law.  Then, having found statutory authorization, the Court must consider whether the exercise of personal jurisdiction is consistent with traditional notions of fair play and due process.  *See Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993); *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985).  Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process.  *See English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990).  It may, however, be possible for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of a Virginia long-arm statute provision.  *See DeSantis v. Hafner Creations, Inc.*, 949 F.Supp. 419, 423 (E.D. Va. 1996).  As always, the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a district court decides a pretrial personal jurisdiction motion without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 396 (4th Cir. 1989).  In

deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff. *Id.*

### III.  Analysis

A) <u>Statute of Limitations</u>

    1) <u>Count I: Breach of Contract Against Kariman</u>

The parties in this case agree that the contract at issue is governed by the laws of Ukraine, while the applicable statute of limitations is governed by Virginia law.  Virginia employs a five-year statute of limitations for breach of contract, accruing from the date of notice.  Va. Code §§ 8.01-230, 246.  However, under Virginia's borrowing statute, "no action shall be maintained on any contract which is governed by the law of another state or country if the right of action is barred by either the laws of such state or country or of [the] Commonwealth [of Virginia]."  Va. Code § 8.01-247.  Accordingly, this Court must apply the shorter limitations period between those of Virginia and Ukraine.  While Virginia provides for a five-year statute of limitations for breach of contract, Ukraine provides for a three year statute of limitations from the date of accrual.  CIVIL CODE OF UKRAINE, PART V, Art. 257(1).  The Ukrainian Civil Code defines accrual as "when the aggrieved party knows, or should have known of the violation of his rights."  *Id.* at Art. 261(1).  As alleged in the Complaint, Khoroshaylov was

aware of the alleged contractual violation in June of 2002. Accordingly, the claim is not barred under the Virginia statute of limitations, but would be barred under the Ukrainian statute of limitations, unless the statute has been tolled.[2]  The Court will proceed with an analysis of the Ukrainian statute of limitations.

Plaintiff claims that the statute of limitations was tolled pursuant to Ukrainian law.  Supporting this argument, Plaintiff provides the declaration of a Ukranian attorney, Alexey Brynzev, who testified that under UKRAINIAN CIVIL CODE, PART V, Art. 263(1)(1), running of the statute of limitations is tolled by an "extraordinary and unavoidable event."  Brynzev Decl. at ¶ 18.  Brynzev further testified that under Article 264, the statute of limitations is tolled upon "performing by a person an act which evidences the acknowledgment thereby of his or her debt or another obligation."  *Id.* at ¶ 19.  However, the Court cannot base this decision on the suggestive declaration of an attorney alone.  To make this determination, the Court will need to analyze actual Ukrainian statutes, precedent, or interpretive

---

[2]As the assignee of Khoroshaylov's contractual rights, Plaintiff stands in his shoes for purposes of the statute of limitations. *See, e.g., McCloskey & Co. v. Wright,* 363 F. Supp. 223, 225-28 (E.D. Va. 1973); *Street v. Consumers Mining Corp.,* 39 S.E.2d 271 (Va. 1946).  Plaintiff's argument that the statute of limitations began to run when Eastport Ventures demanded payment in 2005 lacks merit.  The statute began to run under both Virginia and Ukrainian law in June 2002 when the assignor learned that the contract was allegedly breached and demanded repayment.  Therefore, Ukraine's three year statute of limitations would have expired in June 2005 unless tolled.

aids other than Brynzev's testimony.  Furthermore, once the applicable rules of tolling under Ukrainian law are determined, discovery is needed to determine the factual circumstances which may have tolled the statute.  Accordingly, the Court will reserve judgment on this issue until such discovery is completed and an evidentiary hearing may be held.

> 2) <u>Counts II and III: Money Had and Received Against Soft Inc. and Soft LLC</u>

Counts II and III, for "money had and received" against domestic companies Soft Inc. and Soft LLC fall are subject to a three-year statute of limitations under both Virginia and Ukrainian law.  However, accrual dates differ between the two.  Under the Virginia statute, a claim for money had and received accrues upon the date of payment.  *Webb v. United States Fidelity & Guaranty Co.,* 182 S.E.2d 557, 558 (Va. 1942).  Under Ukrainian law, the claim is deemed to have accrued when the alleged violation was discovered.  CIVIL CODE OF UKRAINE, PART V., Art. 261(1).  The money was received between October 2001 and February 2002, and Khoroshaylov discovered the alleged violation in June 2002.  Thus, the statute of limitations expired in February 2005 under Virginia law, and June 2005 under Ukrainian law.  Because Virginia's borrowing statute will apply the shorter statute of limitations, the Virginia statute of limitations will apply, which expired in February 2002.  Accordingly, this court need not analyze any potential tolling issues under Ukrainian law.  Counts

II and III are time-barred and will be dismissed.  As Count II was the only cause of action against Defendant Soft Inc., and Count III was the only cause of action against Soft LLC, both of these Defendants will be dismissed from this case.

    B)    <u>Subject Matter Jurisdiction</u>

A federal court may exercise diversity jurisdiction over a civil action when the amount in controversy exceeds $75,000 and is between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).  The diversity jurisdiction statute also requires complete diversity of citizenship of each plaintiff from each defendant.  *Rosmer v. Pfizer, Inc.*, 263 F.3d 110, 123 (4th Cir. 2001).  Diversity is lacking where on one side there are citizens and aliens and on the opposite side there are only aliens. *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004)(citing *Universal Licensing Corp. v. Paola Del Lunga S.P.A.*, 293 F.3d 579, 581 (2d Cir. 2002).  It is uncontested that Plaintiff is an alien corporation, and Defendants Soft Inc. and Soft LLC are citizens of states.  Thus, the question of complete diversity hinges on the status of Kariman.

When an individual holds dual citizenship of the United States and a foreign country, federal courts generally disregard the foreign citizenship for the purposes of diversity jurisdiction.  *See, e.g., General Technology Applications,* 388

F.3d at 121-22; *Sadat v. Mertes,* 615 F.2d 1176, 1187 (7th Cir. 1980); *Unies v. Kroll & Lindstrom,* 957 F.2d 707, 711 (9th Cir. 1992). However, for purposes of the diversity statute, an individual with dual citizenship must also be a domiciliary of the State. *Newman-Green v. Alfonzo-Larrain,* 490 U.S. 826, 828 (1989). Kariman claims that he is a dual citizen of the United States and Ukraine, temporarily resides in Maryland, but is domiciled in Ukraine. Accordingly, in order to exercise diversity jurisdiction, the Court must conclude that Kariman has a domicile in the United States.

Domicile is evidenced by actual residence and intent to make that residence one's permanent home. *Gambelli v. United States,* 904 F. Supp. 494, 496 (E.D. Va. 1995). The existence of such citizenship cannot be inferred from allegations of mere residence, standing alone. *Axel Johnson, Inc. v. Carroll Carolina Oil Co., Inc.,* 145 F.3d 660, 663-64 (4th Cir. 1998). Kariman admits that he was domiciled in the United States in 1994, became a naturalized citizen on February 14, 2003, has a valid United States Passport, and that he currently "resides" in Maryland. Kariman was declared to be the resident agent of Virginia corporation in 2004 and at that time had a valid Maryland drivers' license. Plaintiff's argument against Kariman's Ukrainian domicile is bolstered by the fact that a criminal case is pending against him in the Ukraine, and he was

declared a "wanted person" by Ukrainian authorities on July 22, 2005.  *See* Pl.'s Opp. Brf., Ex. A. at ¶ 9; Ex. C; Ex. D. at ¶18.  An investigation led by Ukrainian authorities also concluded that Kariman did not live at the Kiev address he provided as of January 29, 2007, and that he was last in Ukraine on July 29, 2004, but has not returned since.  *Id.* at Ex. C.

Kariman provides an affidavit stating that he is domiciled in Ukraine.  Defendant's affidavit states that he currently resides in Maryland "while I am working on the start-up of [Soft LLC] operations" and that he intends to return to Kiev, Ukraine "when that work is completed."  Kariman Suppl. Decl. at ¶ 10.  The affidavit also states that his current residence, along with his wife and daughter, is in Kiev, Ukraine.  Defendant provided a lease agreement in Ukraine, (*Id.* at Ex. 16), a Ukrainian marriage certificate from 2002 (*Id.* at Ex. 17), Ukrainian passports, driver's license, and social security card (*Id.* at Ex. 11-14).  However, the documents provided by Kariman all predated naturalization to the United States in 2003, and the lease agreement is in the name of Kariman's wife.  Furthermore, the evidence suggests that Kariman visited Ukraine using his United States passport and a Ukrainian visa.

While the evidence favors domicile in Maryland, there is clearly a factual dispute as to Kariman's actual domicile, as well as conflicting evidence and affidavits.  For the Court to

decide the issue of Kariman's domicile, more evidence is necessary. Accordingly, the Court will decline a ruling on subject matter jurisdiction until such discovery has been completed, and permit an evidentiary hearing on the issue of domicile following discovery on this issue.

    B)  <u>Personal Jurisdiction</u>

A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has "minimum contacts" with the forum, such that to require the defendant to defend its interests in that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The standard for determining the existence of personal jurisdiction over a nonresident defendant depends on whether the defendant's contacts with the forum state also provide the basis for the suit. If those contacts form the basis for the suit, they may establish "specific jurisdiction." *Carefirst,* 334 F.3d at 397. If, however, the defendant's contacts with the state are not the basis for the suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the state. *Id.* at 397. To establish general jurisdiction, the defendant's activities in the state must have been "continuous and systematic." *ALS Scan,* 293 F.3d at 712; *see Helicopteros,* 466 U.S. at 414 n.9.

In the instant action, it is uncontested the activity giving rise to the suit occurred in Ukraine, not the Commonwealth of Virginia, so specific jurisdiction is not at issue.  Thus, the Court's analysis will focus on general jurisdiction over non-resident Kariman.[3]  Upon a review of the pleadings and relevant affidavits and facts, this Court concludes that Kariman does maintain continuous and systematic contacts with the Commonwealth of Virginia.  Kariman is listed as the Virginia registered agent for Defendant Soft LLC, which is a Virginia-based limited liability corporation.[4]  Kariman is a member of Soft LLC, which is based at 1111 Robindale Drive, Great Falls, Virginia.  Jerro Decl. at ¶¶ 2-4.  This address is also the residence of Karmian's mother Julia and Ronald Jerro, the other two members of Soft LLC.  According to Ronald Jerro, Kariman is "often there for work purposes" and on occasion "he will stay overnight either as a guest of his mother, or for business purposes related to Soft LLC."  *Id.* at ¶ 4.  However, when private investigator Donald

---

[3] Claims against corporate Defendants Soft Inc. and Soft LLC will be dismissed as time-barred.  *See supra,* Part A.  Accordingly, this Court will not address personal jurisdiction for each of these Defendants, as there are no longer any existing claims against them.  The only claim that has not been dismissed by this Court is Count I, which was pled exclusively against Kariman, for breach of a contract to which neither corporate entity was a party.

[4] Kariman is listed as the Virginia registered agent for Soft LLC. Defendant denies being the actual Virginia registered agent, and raised possible scrivener's error as an explanation.  The issue of scrivener's error on the corporate registration remains a disputed fact.  Nonetheless, the Court finds sufficient contacts with the Commonwealth even without considering this factor to warrant exercise of personal jurisdiction.

Wheeler visited the address, Mr. Jerro informed him that Kariman was "not home," indicating that the address was in fact his residence. *See* Wheeler Decl. at ¶ 8.

Regardless of Kariman's actual domicile and residence, the argument presented that he has "no contacts" with the Commonwealth of Virginia lack merit. Kariman is a principal member of a Virginia limited liability company, Soft LLC, which maintains a principal place of business in Great Falls, Virginia. According to his own partner, Kariman regularly conducts business at the Great Falls address, and he admits to receiving mail there as late as 2005. Jerro Decl. at ¶¶ 3-11. Accordingly, this Court finds that Defendant Kariman maintains continuous and systematic contacts with the Commonwealth of Virginia warranting the exercise of personal jurisdiction. Defendants' motion to dismiss will be denied on this ground.

    C) *Forum Non Conveniens*

Under the common law doctrine of *forum non conveniens,* a court may dismiss an action based on a finding that, "when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Kontoulas v. A.H. Robins Co., Inc.,* 745 F.2d 312, 315 (4th Cir. 1984). Once a court determines that an adequate, available forum exists, it must weigh various

public and private interest factors. These factors have been outlined by the United States Supreme Court as follows:

> [Private factors include]: (1) the relative ease of access to proof; (2) the availability of compulsory process for unwilling witnesses, and cost of obtaining attendance of willing witnesses; (3) the possibility of viewing subject premises if appropriate; and (4) all other factors that would facilitate an easy, expeditious and inexpensive trial.
>
> The public interest factors include: (1) the possibility of court congestion; (2) not imposing jury duty on people who have no connection with the litigation; (3) the local interest in having localized controversies decided at home; (4) having a diversity case tried in a forum familiar with the governing law; and (5) avoidance of unnecessary problems in conflicts of law.

*Gulf Oil v. Gilbert,* 330 U.S. 501, 508-09 (1947). The power to exercise this doctrine is discretionary, but only be exercised in exceptional circumstances. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257 (1981); *Gulf Oil* 330 U.S. at 504. There is typically a strong presumption in favor of plaintiff's choice of forum, which should rarely be disturbed. *Gulf Oil,* 330 U.S. at 508. However, this presumption applies with substantially less force when the plaintiff chooses a foreign forum, since the chosen forum is inherently less convenient. *Piper Aircraft,* 454 U.S. at 256.

During oral argument, Kariman, by counsel, agreed to consent to personal jurisdiction in the Ukraine, and argued that an available forum exists in the Ukraine because he is a dual citizen allegedly domiciled there. However, facts alleged by

Plaintiff indicate that several attempts have been made in Ukraine to obtain jurisdiction over Kariman, which failed, and that civil action in Ukraine is not possible until the resolution of criminal charges.  Bryznev Decl. at ¶¶ 18-20; Vallen Decl. at ¶¶ 6-9.[5]  Therefore, this Court is not in a position to rule upon the issues of Ukrainian jurisdiction and available and adequate forum, which remain an issue of dispute for this time.  However, should the Court obtain a written consent to Ukrainian jurisdiction by Kariman and information confirming Ukrainian jurisdiction over the case, this factor would heavily favor dismissal under *forum non conveniens.*

　　　　Kariman also presents valid arguments for several of the private interest factors.  Most of the sources of testimony and documents in this case are in Ukraine, native speakers of the Russian language, and the documents at issue are primarily in Russian.  There are potential problems with compelling Ukrainian witnesses to travel to the United States to testify.  As for public interest factors, the contract is governed by Ukrainian law, which will require this Court to interpret foreign law and language.  This factor favors dismissal.  Nonetheless, this Court

---

[5]Defendants point out that the declarations cannot be relied upon by this Court because they are not properly sworn.  However, each declaration does begin with the phrase "under penalty of perjury."  Furthermore, this Court will grant additional discovery on these matters, and at that time evidence can be properly sworn and admitted to the Court for consideration.  At this time, the declarations at a minimum raise a question that needs to be addressed by future discovery.

is not yet in a position to weigh these murky factual allegations against Plaintiff's choice of forum to determine if dismissal is warranted.  Accordingly, the Court will revisit Defendants' motion to dismiss based on *forum non conveniens* following discovery.

### IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted with respect to Counts II and III, but denied with respect to Count I.  Defendants Soft Inc. and Soft LLC will be dismissed from this case.  Plaintiff will be allowed to conduct discovery related to Count I against Kariman.  An appropriate Order will issue.

March 13, 2006                            _____/s/_____
Alexandria, Virginia                              James C. Cacheris
                                          UNITED STATES DISTRICT COURT JUDGE